UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────

RAYMOND CIMINO, 02-B-2364,

        Petitioner,

     -v-                         08-CV-6318(MAT)
                                       **ORDER**

JAMES T. CONWAY, Superintendent
of Attica Correctional Facility,

        Respondent.
───────────────────────────

## I.   Introduction

    *Pro se* petitioner Raymond Cimino ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Supreme Court of two counts of attempted aggravated assault on a police officer (N.Y. Penal L. §§ 110.00, 120.11) and three counts of first-degree reckless endangerment (§ 120.25) following a jury trial before Justice Donald Mark. Petitioner is currently serving a sentence of imprisonment of fifteen years to life for the instant conviction.

## II.  Factual Background and Procedural History

    On July 26, 2001, two uniformed Rochester Police officers on bicycle patrol observed what they believed to be criminal activity in the area of Saratoga Avenue and Smith Street, and stopped a red Dodge pickup truck in connection with that activity. The driver, (petitioner) responded to the officers' request and began to pull over, but then turned the truck toward one of the officers and accelerated. Officer Michael Nicholls jumped out of the path of the

approaching truck; the truck then ran over his bicycle and continued up onto the curb. Petitioner then drove off, leading police on a 20-minute pursuit through the streets of Rochester, during which he drove through stop signs, drove the wrong way down one-way streets, and ran red lights. Trial Tr. dated 7/22/2002-7/29/2002 ("Vol. 1") at 282-294, 371-379, 463-465.

While driving the wrong way on Stanford Street, petitioner drove his truck up onto a curb where an 11-year old girl was standing with her friends. Petitioner drove within a few feet of the girl, who fell backwards off of her bike, and then continued on Sanford until driving over a spike strip laid in the road by New York State police. Petitioner crashed into a parked car, drove onto the sidewalk and into the backyards of houses, nearly hitting another officer, Daniel Berardini, who had been pursuing petitioner on foot. Petitioner's truck then struck a parked patrol vehicle on South Avenue. Petitioner finally stopped when officers fired at his vehicle. Trial Tr. Vol. 1 at 466-482, 617-625, 646-654, 960, 998-1003.

Petitioner told police that he fled from the officers because he knew there was a warrant out for his arrest. He also acknowledged that he had just purchased crack cocaine and wanted to smoke it before he was caught. Petitioner told officers that he did not want to hurt anyone, but acknowledged that the vehicle he was driving had faulty breaks and that he needed to use the emergency

brake in order to stop the truck. Trial Tr. Vol. 1 at 1260-1263, 1281-1283.

The jury found petitioner guilty of all five counts in the indictment. Trial Tr. dated 7/31/2002 ("Vol. 3") at 15-16. Following a hearing on the matter, petitioner was adjudicated and sentenced as a persistent felony offender to fifteen years to life imprisonment. See Hr'g Tr. dated 10/25/2002; Sentencing Tr. dated 11/8/2002 at 2-3.

Prior to perfecting his direct appeal, petitioner filed three motions pursuant to N.Y. Crim. Proc. L. ("C.P.L.") § 440 in Monroe County Supreme Court. On December 23, 2003, petitioner moved to set aside his sentence on the basis that his enhanced sentence violated the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000). See Respondent's Appendix ("Resp't Appx.") I. That motion was denied on April 19, 2004, see Resp't Appx. L, and leave to appeal that denial was denied by the Appellate Division May 18, 2004. Resp't Appx. O. Petitioner then filed a § 440.10 motion to vacate the judgment of conviction on July 19, 2004 alleging that the prosecution failed provide the defense with material pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Resp't Appx. P. That motion was denied on January 25, 2005. Resp't Appx. R. Leave to appeal that decision was not sought. Thereafter, on April 12, 2006, petitioner filed another § 440.10/20 motion, raising his Brady claim again also adding a claim of a violation of People v.

<u>Rosario</u>, 9 N.Y.2d 286 (1961). Resp't Appx. S. The Supreme Court of Monroe County denied that motion on September 7, 2006, and leave to appeal that denial was denied by the Appellate Division, Fourth Department on June 18, 2007. Resp't Appx. V, Y.

Through counsel, petitioner filed a brief in the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. <u>People v. Cimino</u>, 49 A.D.3d 1155 (4th Dept. 2008), <u>lv. denied</u>, 10 N.Y.3d 861 (2008).

Petitioner then filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 18, 2008, alleging the following grounds for relief: (1) the conviction was not supported by legally sufficient evidence and the verdicts were inconsistent; (2) petitioner was denied his constitutional right to present a defense; (3) the trial court erred in permitting the introduction of evidence of prior bad acts; (4) the trial court erred in denying petitioner's supplemental suppression motion; (5) petitioner's statements to police were involuntary; (6) New York's persistent felony offender statute is unconstitutional; (7) ineffective assistance of trial counsel; and (8) the prosecutor committed a <u>Brady</u> violation. Petition ("Pet.") at 19-48.

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A.    General Principles Applicable to Federal Habeas Review

#### 1.    Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v.

Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

## 2. The Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not

review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

## B.   Merits of the Petition

### 1.   Sufficiency of the Evidence/Inconsistent Verdicts

As he did on direct appeal, petitioner alleges that the evidence was legally insufficient to support his convictions of attempted assault on a police officer and first-degree reckless endangerment.[1] He further contends that the verdicts finding him guilty of those crimes were legally inconsistent. Pet. at 19-31.

On direct review, the Appellate Division held that petitioner failed to preserve his legal insufficiency argument and, in any event, the contention was without merit. Cimino, 49 A.D.3d at 1157 (citing People v. Hines, 97 N.Y.2d 56, 61 (2001)). The appellate court further held that the verdicts finding petitioner guilty of attempted assault on a police officer and first-degree reckless endangerment, which arose from the same act, were "not inconsistent

---

[1]   Aggravated assault upon a police officer requires a person to intentionally cause "serious physical injury to a person whom he knows or reasonably should know to be a police officer or a peace officer engaged in the course of performing his official duties . . . by means of a deadly weapon or dangerous instrument." N.Y. Penal L. § 120.11. A person is guilty of reckless endangerment in the first degree when, with "a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." N.Y. Penal L. § 120.25.

inasmuch as those two crimes 'entail distinct results.'" <u>Id.</u> at 1156 (quoting <u>People v Trappier</u>, 87 N.Y.2d 55, 59 (1995)).

The New York Court of Appeals has held that the contemporaneous objection rule, <u>see</u> C.P.L. § 470.05(2), requires that a motion to dismiss must alert the trial court to the specific deficiency alleged in order to preserve an insufficiency of the evidence claim for appeal. <u>People v. Gray</u>, 86 N.Y.2d 10, 19 (1995). Moreover, when a defendant presents evidence after the trial court has declined to grant a motion to dismiss under C.P.L. § 290.10(1) following the close of the prosecution's case, he waives his Section 290.10(1) claim. He may not present a legal insufficiency argument through a C.P.L. § 330.30 motion to set aside the verdict unless it has been properly preserved for review during the trial by renewing his motion to dismiss at the close of all the evidence. <u>Hines</u>, 97 N.Y.2d at 61-62; <u>see also</u> <u>People v. Harris</u>, 98 N.Y.2d 452, 492, (2002). The record indicates that while petitioner moved for a trial order of dismissal at the close of the prosecutions's case, he did not renew his legal sufficiency challenge after presenting his own evidence. Trial Tr. Vol. 1 at 1329, Vol. 3 at 2. 2.

Here, the Appellate Division expressly refused to reach the merits of petitioner's unpreserved claim by invoking New York's contemporaneous objection rule, which is an adequate and independent state ground barring habeas review. <u>See</u> <u>Velasquez v.</u>

Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); accord, e.g., Mills v. Poole, No. 06-CV00842A, 2008 WL 2699394, *11 (W.D.N.Y. June 30, 2008) (analyzing § 470.05(2) in light of factors set forth in Cotto v. Herbert, 331 F.3d 217 (2d Cir.2003)).

A federal habeas court may review a petitioner's procedurally defaulted claim only if petitioner "can show cause for the default and prejudice attributable thereto," or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 485, 495 (1986) (internal quotations omitted) (citation omitted); accord, e.g., Velasquez, 898 F.2d at 9. Petitioner has not alleged cause or prejudice in his submissions to the Court, and I find neither present on the record before me. Furthermore, petitioner has not made a colorable showing of actual innocence so as to warrant invocation of the "miscarriage of justice" exception. See McCleskey v. Zant, 499 U.S. 467, 495 (1991). Consequently, petitioner cannot overcome the state procedural default and this claim of legal insufficiency is barred from habeas review.

Insofar as petitioner seeks to challenge the verdicts[2] as "logically inconsistent," the respondent has pointed out that the Supreme Court has not addressed the issue presented by petitioner

---

[2] I note here that the parties and lower courts appear to have used "inconsistent counts" and "inconsistent verdicts" interchangeably. Likewise, the Court will not differentiate between the two terms in its discussion.

in this case--that the petitioner was convicted of two logically inconsistent crimes. <u>See</u> C.P.L. § 300.30(5) ("Two counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other."). Under AEDPA, a petitioner is only entitled to relief on a claim where the state court decision was contrary to or involved an unreasonable application of "clearly established" Supreme Court precedent. <u>See</u> <u>Williams</u>, 529 U.S. at 412.

Moreover, it is well-settled that inconsistent jury verdicts, that is, where a conviction is inconsistent with the jury's verdict of acquittal on another count or where the verdicts treat co-defendants in a joint trial inconsistently, are constitutionally permissible, and do not present a question for federal habeas review. <u>See</u> <u>Dunn v. United States</u>, 284 U.S. 390 (1932), <u>Dowling v. United States</u>, 493 U.S. 342 (1990) (stating that "inconsistent verdicts are constitutionally tolerable"); <u>Harris v. Rivera</u>, 454 U.S. 339, 345 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside"); <u>United States v. Powell</u>, 469 U.S. 57, 58, 64-65 (1984) (holding that "consistency in the verdict is not necessary" and noting that inconsistent verdicts are often the product of "mistake, compromise, or lenity,"); <u>accord, e.g.,</u> <u>Muldrow v. Herbert</u>, 299 F.Supp.2d 166, 170 (W.D.N.Y. 2004) ("an allegedly inconsistent verdict does not present a constitutional violation ... [and] is not even cognizable on habeas

review."); <u>Williams v. Artuz</u>, 98 Civ. 7964, 2002 WL 989529 at *8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted."). The Supreme Court has observed that a criminal defendant "already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts" and therefore "further safeguards against jury irrationality" are not necessary. <u>Powell</u>, 469 U.S. at 67.

In any event, petitioner's convictions are not inconsistent under New York Law. "'Two counts are "inconsistent" when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other.'" <u>Sweet v. Bennett</u>, 353 F.3d 135, 143 (2d Cir. 2003) (citing C.P.L. § 300.30(5)) (Walker, C.J. concurring). However, "there is no inconsistency if the defendant acts with different mental states with regard to two different potential or intended results." <u>Id.</u> at 144; <u>see also</u> <u>Trappier</u>, 87 N.Y.2d at 57-58 (finding convictions on first-degree attempted assault and first-degree reckless endangerment consistent where the counts entailed two distinct results stemming from the same act). Thus, courts in New York have held that "there is no inconsistency if the defendant acts with different mental states with regard to two different potential or intended results[,]" such as where "the defendant intentionally beats his victim but is indifferent and

reckless as to whether the victim dies." <u>Sweet</u>, 353 F.3d at 145 (citing <u>People v. Moloi</u>, 135 A.D.2d 576 (2nd Dept.1987)). Here, petitioner was charged with attempting to intentionally cause *serious physical injury* to a police officer, and also recklessly (with depraved indifference) creating a *grave risk of death* to another. The results of these two offenses are clearly distinct and precisely on point with the facts presented in <u>Trappier</u>. Thus, the verdicts do not present an error of state law, and petitioner has failed to allege a constitutional infirmity as well. This claim is dismissed.

## 2. Right to Present a Defense

Petitioner next avers that his constitutional right to present a defense was violated by the trial court's instruction to the jury that certain evidence presented by petitioner would not constitute a defense to the crimes charged. Pet. at 26-31. The record reflects that at trial, petitioner argued that he fled the police because he did not believe they had a lawful right to stop him. His theory of defense was that he did not possess the requisite state of mind to be convicted of the charges, i.e., that his conduct was not intentional, nor was it reckless with depraved indifference.[3] To advance this theory, the defense sought to establish that police violated provisions of "General Order 530," an internal police

---

[3] Under the facts of this case, petitioner could not raise a justification defense, <u>see</u> N.Y. Penal L. § 35.05(2), and was estopped from raising lack of probable cause as a defense because the trial court denied petitioner's pre-trial suppression motion.

department order which governs pursuit of vehicles by Rochester Police officers. The General Order was admitted into evidence, referenced in the defense's opening and closing arguments, and was subject to extensive cross-examination and re-direct examination. Trial Tr. Vol. 1 at 248-50, 251-58, 260-63, 351-56, 364, 410-12, 532, 535-46, 600, 611-12; Trial Tr. dated 7/30/2002 ("Vol. 2") at 15, 25-28, 33.

In its final instructions to the jury, the trial court explained that,

> [W]hether the police conduct in pursuing and apprehending the defendant was or was not in violation of their internal General Orders and legal consequences of any such violation of those General orders are . . . legal matters resolvable by a court or the Rochester Police Department and not by the jury. [This] evidence was submitted . . . solely in connection with the issue of police witness credibility . . . . Therefore, even if you determine that the police did violate the General Orders in this case, such violation does not constitute a defense to the crimes charged in the indictment.

Trial Tr. Vol. 3 at 51-52.[4]

Defense counsel did not object to the charge, and Appellate Division consequently found petitioner's argument unpreserved for appellate review, further declining to review his contention in the interest of justice. Cimino, 49 A.D.3d at 1157 (citing C.P.L. § 470.05(2)). Petitioner's claim is therefore procedurally barred

---

[4] The trial court explained its rational for how it handled the jury charges in People v. Cimino, 193 Misc.2d 527 (N.Y. Sup. Monroe County Sept. 18, 2002).

on habeas review. As explained above, New York's contemporaneous objection rule is an independent and adequate state procedural ground for the state court not to reach the federal question. <u>See</u> <u>supra</u>, III.B.1. Petitioner has not attempted to overcome the procedural bar, and this claim is therefore dismissed.

### 3. Prior Bad Acts

Petitioner claims that the trial court erred in allowing into evidence testimony regarding his parole status and drug paraphernalia found in his truck. Pet. at 31-33. The Appellate Division rejected petitioner's contentions on the merits. <u>Cimino</u>, 49 A.D.3d at 1156. Both claims, however, relating to the trial court's admission of evidence uncharged crimes and the fact that petitioner was previously incarcerated, do not present constitutional issues cognizable on habeas review.

First, petitioner's claim that the court abused its discretion in its <u>Sandoval</u>[5] ruling is barred from habeas review because petitioner failed to testify at trial. <u>See</u> <u>Grace v. Artuz</u>, 258 F.Supp.2d 162, 171-72 (E.D.N.Y. 2003) (in absence of petitioner taking the stand to testify at trial, "petitioner's claim as to the impropriety of the <u>Sandoval</u> ruling [did] not raise a constitutional issue cognizable on habeas review") (citing <u>Carroll v. Hoke</u>, 695 F.Supp. 1435, 1440 (E.D.N.Y. 1988)), <u>aff'd</u>, 880 F.2d 1318 (2d Cir.

---

[5] <u>People v. Sandoval</u>, 34 N.Y.2d 371 (1974) (a New York defendant is entitled to a prospective ruling on admissibility of prior convictions or proof of prior commission of specific criminal, vicious, or immoral acts to impeach a defendant's credibility).

1989) (citing <u>Luce v. United States</u>, 469 U.S. 38, 43 (1984) (holding that in order "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify")); <u>accord</u> <u>Brathwaite v. Duncan</u>, 271 F.Supp.2d 400, 401 (E.D.N.Y. 2003) (<u>Sandoval</u> claim not cognizable on federal habeas review where petitioner did not testify at trial).

Second, petitioner's <u>Molineux</u> claim raises an evidentiary matter generally not cognizable on habeas review. <u>Roldan v. Artuz</u>, 78 F.Supp.2d 260, 276 (S.D.N.Y. 2000). Rather, federal courts reviewing evidentiary matters may issue a writ of habeas corpus only if the petitioner demonstrates that the alleged evidentiary error violated a constitutional right and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice." <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998) (internal quotation omitted). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" <u>Id.</u> (quoting <u>Johnson v. Ross</u>, 955 F.2d 178, 181 (2d Cir. 1992); citing <u>Collins v. Scully</u>, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant")).

Under New York law, evidence of prior bad acts is admissible to "prove the specific crime charged when it tends to establish

(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial." People v. Molineux, 168 N.Y. 264, 293 (1901).

Here, the trial court modified its original Molineux ruling by allowing the prosecutor to present testimony of police officers concerning their suspicion that petitioner was purchasing illegal narcotics. However, defense counsel "opened the door" to such testimony during his opening statement, a theory that has been recognized by New York's highest court. See generally People v. Melendez, 55 N.Y.2d 445 (1982). Petitioner thus cannot establish an error of state law, let alone an error of constitutional magnitude, flowing from the admission of this evidence. See Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct.17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude).

In any event, the evidence of petitioner's uncharged bad acts, i.e., the presence of drug paraphernalia and liquor bottles in his truck, see Trial Tr. Vol. 1 at 1162-69, 1181-84, did not prejudice petitioner's case so as to constitute a due process violation. The evidence presented at trial established that two bicycle police officers attempted to stop petitioner's vehicle after witnessing a

suspected drug transaction. Petitioner, instead of stopping the vehicle, drove his truck at one officer, who avoided being struck by jumping off his bicycle. The bicycle was run over by petitioner's truck. The two officers reported the incident, and other police officers pursued petitioner's vehicle through the City of Rochester. During that pursuit, petitioner drove his vehicle onto a sidewalk, nearly hitting an 11 year-old girl. He then drove over a spike strip which deflated his tires. Nonetheless, petitioner continued to drive through a yard and out of a driveway, nearly striking yet another uniformed police officer, who was on foot. Petitioner's vehicle only stopped when Rochester Police discharged their firearms at the vehicle, which injured petitioner and his female passenger. The evidence was therefore ample to convict petitioner of attempted aggravated assault as to the two police officers, reckless endangerment involving the same two police officers, and reckless endangerment as to the 11 year-old girl without evidence of the glass cocaine pipe, zip lock baggies, and liquor bottles recovered from the truck.

Petitioner's claims relating to the introduction of prior bad acts at trial is therefore dismissed.

### 4. Fourth Amendment Claim

Petitioner argues that the trial court abused its discretion in summarily denying his supplemental suppression motion as untimely, which challenged the police's legal basis to stop his

truck on Fourth Amendment grounds. Pet. at 33-36. Petitioner further argues that because he was not afforded a hearing on his supplemental suppression motion, he was denied a full and fair opportunity to litigate his claim in the state court. Id. at 35.

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Under Stone, Fourth Amendment violations are generally not cognizable in federal habeas, unless the state has failed to provide the habeas petitioner "an opportunity for full and fair litigation of a Fourth Amendment claim." Wallace v. Kato, 549 U.S. 384 (2007). Stone applies to all Fourth Amendment claims regardless of the nature of the evidence sought to be suppressed. Cardwell v. Taylor, 461 U.S. 571 (1983).

Stone requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (emphasis added). Under this standard, there are only two instances in which a Fourth Amendment claim will be reviewed by a federal habeas court: (1) where the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) where the state has provided a

corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." Capellan v. Riley. 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates, 568 F.2d at 840). The Second Circuit has found that New York law permitting a criminal defendant to file a pre-trial motion to suppress evidence unlawfully seized, see C.P.L. § 710 et seq., provides a sufficient corrective procedure to redress potential violations of a petitioner's Fourth Amendment rights. Cappellan, 975 F.2d at 70 n.1 ("Indeed, the federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.")

Petitioner had a full and fair opportunity to litigate his claims in the state courts. While petitioner challenges the denial of his supplemental application for a probable cause hearing, the record indicates that petitioner, through counsel, previously moved for a hearing on the grounds that no probable cause existed to arrest petitioner and that no exigent circumstances existed for petitioner's warrantless stop, search, and seizure. See Pre-trial Omnibus Mot. dated 12/5/2001 (Resp't Appx. B). Petitioner then sought to re-litigate those claims in a supplemental motion submitted by new counsel, and the motion was summarily denied as untimely by the state court. See Supplemental Mot. dated 7/11/2002 (Resp't Appx. B). Petitioner then challenged the denial of only the supplemental motion on direct review, a contention that was

rejected by the Appellate Division, finding that petitioner was "unable to show good cause for failing to make that motion within the 45-day time period set forth in CPL § 255.20(3)." Cimino, 49 A.D.3d at 1156.

Moreover, petitioner has not shown a breakdown in the underlying process with respect to his Fourth Amendment claims. The fact that the suppression court denied petitioner's motions without a hearing does not establish that the state court "failed to conduct a reasoned method of inquiry into relevant questions of fact and law," so as to give rise to "an unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70-71 (internal quotations and citation omitted); see Small v. Artus, No. CV-07-1117, 2009 WL 2707319, *13 (E.D.N.Y. Aug. 20, 2009) ("Petitioner has not established that the suppression court failed to conduct a reasoned method of inquiry into relevant questions of fact and law in deciding his motion to suppress. The suppression court entertained briefs concerning the suppression hearing and denied petitioner's request for a hearing only after considering the factual and legal claims asserted by the parties . . . . The fact that the suppression court, in its discretion, chose not to hold a hearing does not negate the fact it undertook a serious inquiry into the merits of petitioner's suppression motion."). Rather, a breakdown in a state corrective procedure usually consists of some sort of "disruption or obstruction of a state proceeding."

<u>Capellan</u>, 975 F.2d at 70 (internal quotation omitted). A petitioner is not entitled to habeas relief even if this Court were to disagree with the state court's decision to deny his request for a hearing; the focus of habeas relief must be on the process, and not its outcome. <u>Id.</u> at 71. I find no such breakdown present on this record. This claim is therefore dismissed pursuant to the doctrine of <u>Stone v. Powell</u>.

### 5. **Voluntariness of Statements**

Petitioner also claims that the state court improperly denied his motion to suppress statements he made to police while being treated at a hospital following his arrest. Pet. 36-38. On that point, the Appellate Division held,

> We reject the further contention of defendant that the court erred in refusing to suppress his statements to the police. Although defendant was in the hospital and was receiving a low dosage of morphine when he made the statements, the record of the suppression hearing establishes that he was "not [impaired by drugs] to such a degree that he was incapable of voluntarily, knowingly, and intelligently waiving his <u>Miranda</u> rights." Indeed, the record establishes that defendant was able to engage in a 90-minute interview with the police, and that he read and corrected the document containing his statements after it was reduced to writing.

<u>Cimino</u>, 49 A.D.3d at 1156-57 (quoting <u>People v Snider</u>, 2 A.D.3d 1452, 1452-1453 (4th Dept. 2003)).

"The police may use a defendant's confession [obtained during a custodial interrogation] without transgressing his Fifth

Amendment right only when the decision to confess is the defendant's free choice." United States v. Anderson, 929 F.2d 96, 98 (2d Cir. 1991). The prosecution bears the burden of demonstrating by a preponderance of the evidence that a confession was voluntary. See id. at 99. "[T]he ultimate issue of voluntariness is a legal question requiring independent federal determination." Arizona v. Fulminante, 499 U.S. 279, 287 (1991) (internal quotation omitted); see also Miller v. Fenton, 474 U.S. 104 (1985). On the other hand, "subsidiary factual questions, such as whether a drug has the properties of a truth serum . . . or whether in fact the police engaged in the intimidation tactics alleged by the defendant . . . are entitled to the [§ 2254(e)] presumption." Miller, 474 U.S. at 112 (citations omitted); accord, e.g., Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir. 1998). A post-AEDPA habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence," 28 U.S.C. § 2254(e)(1).

"No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." Green v. Scully, 850 F.2d 894, 901 (2d Cir. 1988) (citing, *inter alia*, Fare v. Michael C., 442 U.S. 707, 726 (1979)). "In applying the totality of the circumstances test, those factors that a court should consider to determine whether an

accused's confession is voluntary center around three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials. The relevant characteristics of the individual who confessed are the individual's experience and background, together with the suspect's youth and lack of education or intelligence." Green, 850 F.2d at 901-02 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).

In the instant case, petitioner was a patient at Strong Memorial hospital when Investigator Campione ("Campione") from the Rochester Police Department arrived to interview him. Following a Huntley hearing, the state court found that prior to entering the room, Campione had a discussion with petitioner's treating nurse to ascertain his condition and what, if any, medications he had been given. After learning that petitioner had been given an antibiotic and 2 milligrams of morphine, Campione entered the hospital room. The investigator observed that petitioner was "alert" and "coherent" and "able to respond to questions being posed," such as his name, address, and education level. Petitioner was then advised of his Miranda warnings, which he waived. Petitioner thereafter provided Campione with his version of events. The interview was terminated when petitioner declined to sign a written statement without first consulting an attorney. Based upon those facts, the state court denied petitioner's motion to suppress his statement to

police. <u>See</u> Decision and Order, Supreme Court, Monroe County, Ind. No., 2001/010453 (Van Strydonk, J.) dated 2/26/2002 (Resp't Appx. B). Petitioner has not come forward with any evidence to rebut the state court's factual findings.

Petitioner, although being treated for injuries he suffered during the incident in question, was able to appropriately interact with police during the entire interview. Petitioner was 39 with a tenth grade education and received a General Equivalency Diploma, and stated that he could read and write. He was alert and coherent at the time of the interview. <u>Huntley</u> Hr'g Tr. dated 2/11/2002 at 18-19. The factual findings of the suppression court supported a finding that the low dosage of morphine was on at the time of the interview did not render his statement involuntary. <u>See</u> <u>Pagan v. Keane</u>, 984 F.2d 61, 63 (2d Cir.1993) (even though the hospitalized defendant had been given morphine three hours before questioning, had a high fever, was required to wear an oxygen mask, and had at least five tubes or catheters connected to his body, his statements were voluntary because he was awake, alert, and oriented).

Accordingly, the Appellate Division's rejection of petitioner's challenge to the voluntariness of his statements made to police is not contrary to, nor an unreasonable application of clearly established federal law.

## 6. Persistent Felony Offender Statute

Petitioner contends and that New York's discretionary enhanced sentencing statute[6] violates the precepts of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000)[7]. Pet. at 38-40. Petitioner relies on the Second Circuit's decision in <u>Besser v. Walsh</u>, 601 F.3d 163, 189 (2d Cir. 2010), which held that New York's persistent felony offender sentencing scheme violated the Sixth Amendment, and that the New York courts unreasonably applied clearly established Supreme Court precedent in holding otherwise. The <u>Besser</u> court then remanded the matters to the district court for consideration of whether those errors were harmless. Several months later, the constitutional question was reheard *en banc*, and, in a 7-3 decision, the Second Circuit concluded in <u>Portalatin v. Graham</u>, 624 F.3d 69, 73 (2d Cir. 2010), that the state courts did *not* engage in an unreasonable application of clearly established Supreme Court precedent in holding that § 70.10 does not run afoul of the Sixth

---

[6] New York's persistent felony offender statute is codified at N.Y. Penal L. § 70.10, and provides that, "[w]hen the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court . . . may impose the sentence of imprisonment authorized by that section for a class A-I felony."

[7] The Supreme Court in <u>Apprendi v. New Jersey</u> held that any fact that increases penalty for crime beyond prescribed statutory maximum (other than the fact of a prior conviction) must be submitted to jury and proved beyond reasonable doubt.

Amendment.[8] <u>Portalatin</u>, 624 F.3d at 90-94. <u>Besser</u>, which had held otherwise, accordingly was vacated by <u>Portalatin</u>. Based upon the authority of <u>Portalatin v. Graham</u>, 624 F.3d 69, petitioner's <u>Apprendi</u> claim challenging his sentencing as a persistent felony offender under N.Y. Penal L. § 70.10 must be denied. <u>See</u> <u>Gibson v. Artus</u>, No. 08-1576, 2010 WL 4342198, *2 (2d Cir. Nov. 3, 2010)(unpublished opinion)("We recently upheld New York's persistent felony offender statute . . . explaining that in the enactment of that statute, 'predicate felonies alone expand the indeterminate sentencing range within which [a] judge has the discretion to operate, and that discretion is cabined only by an assessment of defendant's criminal history.' Under the circumstances, the claim that New York's persistent felony offender statute violated petitioner's right to a jury trial under the Sixth Amendment is without merit.")(quoting <u>Portalatin</u>, 624 F.3d at 94).

### 7. Ineffective Assistance of Trial Counsel

Petitioner next argues that two of his attorneys rendered constitutionally ineffective assistance when one failed to file an

---

[8] <u>E.g.</u>, <u>People v. Rosen</u>, 96 N.Y.2d 329, 335 (2001) (finding § 70.10 did not violate the right to trial by jury under <u>Apprendi</u> because "prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender."); <u>People v. Rivera</u>, 5 N.Y.3d 61, 70 (2005), <u>cert. denied</u>, 546 U.S. 984 (2005)(reiterating that "no additional factfinding beyond the fact of two prior felony convictions is required under Penal Law § 70.10 or under Criminal Procedure Law § 400.20. If, for example, a defendant had an especially long and disturbing history of criminal convictions, a persistent felony offender sentence might well be within the trial justice's discretion even with no further factual findings. Once the defendant is adjudicated a persistent felony offender, the requirement that the sentencing justice reach an opinion as to the defendant's history and character is merely another way of saying that the court should exercise its discretion.").

adequate suppression motion and another failed to preserve certain issues for appellate review. Pet. at 40-47. The Appellate Division summarily rejected petitioner's claim as lacking merit. <u>Cimino</u>, 49 A.D.3d at 1157.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>id.</u>, and may not second-guess defense counsel's strategy. <u>Id.</u> at 690. Here, petitioner has failed to demonstrate that his attorneys' conduct was deficient within the meaning of <u>Strickland</u>,

and that, but for the deficiency, the result of his trial would likely have been different.

### a.    Insufficient Motion Papers

Petitioner contends that his first attorney failed to allege sufficient facts in the pre-trial omnibus motion to secure a hearing on whether the initial police encounter was lawful. Pet. at 43-44.

A review of the record indicates that counsel for petitioner filed a motion seeking suppression of all evidence that flowed from his arrest. <u>See</u> Pre-trial Omnibus Mot. dated 12/5/2001 (Resp't Appx. B). Therein, counsel set forth allegations that petitioner had done nothing unlawful to warrant his arrest and that moments before the arrest, he had been fired upon by members of the Rochester Police Department. <u>See id.</u> at ¶¶ 42-47. Simply because the state court found that the facts as alleged did not entitle petitioner to a hearing does not suggest that counsel's conduct was objectively unreasonable. <u>Strickland</u>, 466 U.S. at 694. To the contrary, a review of the record reveals that petitioner's counsel provided petitioner with excellent representation. Petitioner was extremely limited in the defenses he could pursue, and counsel vigorously sought to undermine the evidence that petitioner acted with the requisite state of mind necessary for conviction with well-thought out, coherent arguments to that end. Overall, it cannot be said on this record that counsel's conduct was deficient.

See <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 386 (1986) ("It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance."); <u>accord</u>, <u>Smalls v. McGinnis</u>, No. 04 Civ.0301(AJP), 2004 WL 1774578, *25 (S.D.N.Y. Aug. 10, 2004)("judged in context and without the benefit of hindsight, trial counsel's performance as a whole did not constitute ineffective assistance.").

### b.    Failure to Preserve Issues for Appeal

Petitioner contends that his successive attorney failed to object to the trial court's jury instruction and failed to preserve for review his challenge to the sufficiency of the evidence. Pet. 44-46.

With respect to petitioner's complaint that counsel failed to lodge an objection against the court's jury charge regarding General Order 530, such a decision is one that generally falls within the ambit of trial strategy[9], and, if reasonably made, will not constitute a basis for an ineffective assistance of counsel claim. See <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d

---

[9] I note that the court's preliminary ruling which permitted inquiry into the General Order at trial did not suggest that the jury would be instructed in a particular manner on that issue. Rather, the court agreed with the prosecutor that the issue was not properly for the jury to consider and stated that it would be "take[n] care of" in the final instructions to the jury. Trial Tr. Vol. 1 at 276. Accordingly, petitioner's counsel was put on notice that the court could instruct the jury that the failure of police to comply with their own procedures would not be properly before them.

Cir.1987). Petitioner was not entitled to a specific instruction regarding his state-of-mind-defense, and the jury was properly instructed on the elements of intent, recklessness, and depraved indifference, and was also instructed on general principles relating to assessing the credibility of witnesses. Trial Tr. Vol. 2 at 51-54, 62-68. Because the court's final instructions were correct under New York state law, there was no reason for petitioner's counsel to object, and counsel cannot be faulted for failing to make a meritless objection or argument. See, e.g., United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance." ); Carvajal v. Artus, 2008 WL 4555531, *35 (S.D.N.Y. Oct.10, 2008) (collecting cases that hold counsel cannot be ineffective for failing to make a meritless objection).

Finally, petitioner's allegation that his attorney failed to preserve his challenge to the legal sufficiency of the evidence does not warrant habeas relief. Petitioner cannot demonstrate that he suffered prejudice as a result of counsel's omission; the Appellate Division alternatively reached the merits of petitioner's argument and rejected it. Cimino, 49 A.D.3d at 1157. See Swail v. Hunt, --- F.Supp.2d ----, 2010 WL 3965696, *7 (W.D.N.Y. Oct. 12, 2010) (Bianchini, M.J.) (holding that trial counsel's failure to preserve insufficiency of evidence claim by means of renewed motion for trial order of dismissal after defense case did not prejudice

defendant, and thus could not amount to ineffective assistance, where appellate court considered merits of insufficiency claim, notwithstanding lack of preservation).

The Appellate Division's rejection of petitioner's ineffective assistance of counsel claims is not contrary to, or an unreasonable application of <u>Strickland v. Washington</u>, and they are therefore dismissed.

### 8. **Brady** Claim

Petitioner concludes his petition with a claim that the prosecutor withheld <u>Brady</u>[10] material from the defense during his trial. Pet. at 47. Petitioner raised this claim by way of a C.P.L. § 440.10 motion in Monroe County Supreme Court, which alleged that the prosecution failed to provide an internal police report ("the report") concerning the police shooting of petitioner and his passenger. The state court concluded that the report was not material to petitioner's guilt or punishment, and therefore did not constitute <u>Brady</u> material. <u>See</u> Decision and Order, Supreme Court, Monroe County, Ind. No. 2001-0569 (Valentino, J.) dated 9/7/2006 (Resp't Appx. V).

To prove a <u>Brady</u> violation, a habeas petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a

---

[10]    <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (Suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution).

prosecution witness; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued from the withholding. Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence is material only if there is a reasonable probability that disclosure of the evidence to the defense would have changed the result of the proceeding. United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682.

The report in question concerned the discharge of service weapons by two police officers during petitioner's vehicle pursuit. Those two officers did not testify at petitioner's trial. Because the report dealt solely with whether the use of force against petitioner was appropriate, it is clearly not "material" evidence for Brady purposes.

The report does reference the statements of various witnesses that testified at petitioner's trial, which were contained in stenographic minutes given to internal affairs. Petitioner has included those minutes as part of his reply memorandum[11], and

_____

[11] In denying petitioner's Rosario claim, the state court found that the internal report "does not list Nicholls or Kehrig among those who gave stenographic statements." [The report] indicates that 'they were interviewed, [and] found to have arrived after the incident [police shooting], and have no direct knowledge of the actual shooting." See Decision and Order, Supreme Court, Monroe County, Ind. No. 2001-0569 (Valentino, J.) dated 9/7/2006 at 7-8. It appears that the state supreme court did have the occasion to examine the stenographic minutes themselves, which have been provided to this Court by petitioner in a comprehensive appendix of exhibits.

contends that specific statements made by Bryan Kehrig ("Kehrig") and Michael Nicholls ("Nicholls") would have impeached each witness' credibility relating to the collision between petitioner's truck and Nicholl's bicycle. I have reviewed the stenographic minutes submitted by petitioner and conclude that this contention also fails to meet the <u>Brady</u> test.

First, petitioner's argument that Nicholls' trial testimony that the "right front tire" hit the bike's rim is at odds with his earlier statement that the "front bumper area" struck the bicycle is unpersuasive. <u>See</u> Trial Tr. Vol. 1 at 293-95; Petitioner's Appendix ("Pet'r Appx.") 3 at p. 4 & 7. Even if this discrepancy could have served to impeach Nicholls' testimony, it is certainly not one that would have changed the result of the proceeding and therefore does not meet <u>Brady</u>'s "materiality" requirement.

Second, there is no disparity between Kehrig's statement made during the internal investigation and his trial testimony. Petitioner told the examining officer that the truck's "driver's side tire ran over [Nicholls'] front tire." Pet'r Appx. 6 at p. 8. His trial testimony mirrored his previous statement. <u>See</u> Trial Tr. Vol. 1 at 378 ("I remember it being the front driver's side going over the bicycle . . .").[12] Accordingly, the stenographic minutes

---

[12] Notably, Nicholls' and Kehrig's testimony at trial was inconsistent as to one another insofar as Nicholls recalled that petitioner's front *passenger* side tire struck his bicycle and Kehrig testified that he saw the front *driver* side tire make contact with the bicycle. <u>See</u> Trial Tr. Vol. 1 at 293-95, 378. Defense counsel appropriately cross-examined on this point and raised the inconsistency again during his summation. <u>See</u> Trial Tr. Vol. 2 at 32.

containing Kehrig's statement was not favorable to petitioner and also does not constitute <u>Brady</u> material.

In sum, I find that the state courts' disposition of petitioner's <u>Brady</u> claim is not contrary to, or an unreasonable application of Supreme Court precedent, and does not state a ground for habeas relief. It is dismissed.

**IV. Conclusion**

For the reasons stated above, Raymond Cimino's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     March 2, 2011
           Rochester, New York